IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Orlando Division

CASE NO.: 6:18-mc-14-Orl-31DCI

In Re: ADA cases

## FEDERAL LEGAL ADVOCATES, LLC., AND MARIO E. LOPEZ' RESPONSE TO ORDER TO SHOW CAUSE [D.E. 4]

Mario E. Lopez, Esq.'s response and responding on behalf of Federal Legal Advocates, LLC, (**FLA**) hereby files this Response to Order to Show Cause, [D.E. 4], on behalf of the himself and Firm and counsels employed or previously employed by FLA during the periods and subject to individual orders to show cause, and in support thereof states as follows:

## INTRODUCTION

FLA began the project of attempting to bring public accommodations in compliance with the ADA, ADAAG, and FAC in the Middle District of Florida when our clients requested we represent them after they encountered barriers in public places of accommodation that where located in the jurisdiction of the Middle District of Florida. As our clients' requests for representation for violations of the ADA grew, the firm grew resulting in the filing of multiple actions to ensure equal access for the individuals the ADA was enacted to protect.

## Why Counsel and the Firm repeatedly Failed to Comply with the Court's Orders and the Rules of the Middle District of Florida

FLA began filing cases in the Middle District of Florida in February of 2016. Internally, the firm has a policy that two attorneys have to review matters prior to filing documents with the Court. This is where Mr. Mario E. Lopez, Esq., appeared in pleadings involving the FLA filings in the Middle District of Florida. The FLA had a managing attorney that would be responsible for litigating the ADA cases and ensuring compliance with Rules of Civil Procedure and Court deadlines. In the Middle District, the Court issues an ADA Scheduling Order outlining

requirements that were different than those requirements set out in the Federal Rules of Civil Procedure for ADA cases. The Middle District Order limits discovery and requires a Rule 34 inspection within thirty-five (35) days of effective service of the Complaint.

FLA and its attorneys learned that Defendants in the Middle District would contact them to resolve the case for a monetary sum and alleged compliance. However, this negotiation would be at the risk of non-compliance with the mandates of the ADA Middle District Standing Order. Any attempts to get a date from Defendants including the inspection required is met with hostility and vigorous opposition. Since Plaintiff's counsel was engaged in settlement negotiations, there would be an inadvertent missing of deadlines. These deadlines were the subject of the Orders to Show Cause. Despite the Court's ADA Scheduling Order, Defendants' file Motions To Dismiss, constantly challenging standing; Requesting Extensions of Time to File their Answer – which the firm and counsel would normally grant as required ethically and as a professional courtesy denying access to the required Rule 34, inspection. In attempting to resolve the case and minimize attorneys' fees and costs, the firm through its attorneys would not file a motion to compel compliance as there was already a adversarial attack that any type of moving the case forward was an attempt to increase recovery of fees and costs. Defendants would then file a boilerplate and frivolous Motions and Answers without providing access to a Rule 34 inspection which would lead to the subsequent deadlines set by the ADA Scheduling Order difficult to meet. Even with these delays, Plaintiff's counsel would work or attempt to work with Defendants' counsel and agree to a Rule 34 inspection date and continue to attempt to comply with the ADA Scheduling Order. The ADA Scheduling Order was used by the Defendants as a weapon and have a chilling effect on the Plaintiff's counsel to properly and effectively bring ADA, ADAAG, and FAC compliance in the Middle District. Defendants' counsels have used this order to delay Plaintiff's attempt to be judicially economic.

FLA and its counsels – both former and current -- engaged in settlement talks from the inception of the cases. Due to these Defendants' tactics, the firm clients had to wait even longer to force a public accommodation to become compliant with a law that is over twenty-five years old.

For the individual attorneys litigating under FLA, it became increasingly frustrating to comply with the Court's ADA Scheduling Order as the Defendants' counsels would engage in vexatious litigation and resist access to their client's property within the proscribed timeframe. The ADA scheduling order worked to bolster the Defendants brazen defiance of the ADA, because there is no pressure on them to comply with the ADA Scheduling Order. At times several deadlines would be delayed and the attorney after deadlines had been missed would sometimes be able to get access to the property but Defendants would deny claiming the time had expired to give access despite the delay being caused the Defendants.

FLA grew and it expanded from one attorney with one assistant to two (2) attorneys and 2 assistants. However, the pressures and vitriol of Defendants, when Plaintiff was seeking compliance lead to several staff changes and did not facilitate the attorneys. This resulted in the Plaintiff's attorneys being held accountable for the Court's imposed deadlines with no repercussions for Defendants. The Court's ADA Scheduling Order has been used by the Defendants' as a weapon, causing a chilling effect of the ability to effectively litigate. Unfortunately, as attorneys left the firm, a new attorney would have to deal with the issues created by the vacating attorney.

The average time of cases filed by FLA under the ADA to resolution was under one (1) year. No trial have occurred in the Middle District of Florida. While is it true that deadlines have been missed, many times the reason for the failure to comply, was due to the Parties engaging in vigorous settlement negotiations, which have ultimately lead to enforced compliance with the ADA, ADAAG, and FAC throughout the Middle District and the resolution of cases.

It took FLA time to fully staff and keep up with the demands and nature of ADA litigation in the Middle District, however, current attorneys and staff still encounter adversity with Defendant's counsel who are less that professional at times and know that unless Plaintiff moves them to allow access to conduct a Rule 34 and then mediate, without any discovery, they can hide behind the ADA Scheduling Order, much less allow Plaintiff's counsel to act as a private attorney general and confirm compliance. Moreover, civil rights enforcement is expensive, time consuming, and technical. *On the technical aspects of civil rights litigation, with a focus on the disability rights context, see Samuel R. Bagenstos, The Perversity of Limited Civil Rights Remedies: The Case of "Abusive" ADA Litigation*, 54 UCLA L. REV. 1 (2006). "Even in cases that are relatively easy on the merits, civil rights claimants often must present expert testimony, which they and their lawyers may have difficulty locating and paying for. *See, e.g., Stephen C. Yeazell, Brown, the Civil Rights Movement, and the Silent Litigation Revolution*, 57 VAND. L. REV. 1975, 2000 n.98 (2004) (link). And—whether because of statutory limitations or because of the Eleventh Amendment—many civil rights laws authorize only injunctive relief and thereby make it impossible for civil rights claimants to entice attorneys with the prospect of a contingent fee." Samuel R. Bagenstos, *Mandatory Pro Bono and Private Attorneys General*, 101 NORTHWESTERN. L. REV. 2007. The Private Attorney General enforcing Title III compliance is not a "lauded area of practice" however, it is necessary. The Supreme Court has held , that Title III Plaintiff's attorneys are not entitled to recover their fees, if the lawsuit spurs the Defendant to comply with the ADA and "voluntarily" bring their public accommodation into compliance. *See Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598, 121 S. Ct. 1845 (2001).

Although missing Court imposed deadlines is never excusable, the result of the litigation, by and through, this firm has resulted in many settlements and agreements that require compliance

with the ADA. Federal Legal Advocates, LCC, prides itself on the fact that even though there are many confidential settlement agreements, all require remediations within a proscribed time period, and a right of re-inspection. The current attorneys at FLA, William T. Leveille, II, and Michael Christine, both whom have only been admitted to the Middle District for less than six (6) months, inherited cases with duplicative negative orders even though most have been closed. In fact, the list of cases with Order to Show Causes in the Middle District [D.E. 4], contains only cases that have been settled and/or dismissed – most of them – expeditiously settled by the two current attorneys. Undersigned counsel was not actively litigating the Middle District Cases initially but as attorneys left the firm due to the unenthusiastic nature of ADA litigation in the Middle District, undersigned counsel became more active in mentoring and assisting FLA attorneys on how to deal with Defendants.

## **Why Sanctions Should NOT be Imposed as a Result of Those Failures**

The Court has broad discretion to sanction an attorney for failing to abide by orders. Fed. R. Civ. P. 16(f); *see also*, e.g., *Wouters v. Martin County, Fla.*, 9 F.3d 924, 933 (11th Cir.1993) ("District courts have broad powers under the rules to impose sanctions for a party's failure to abide by court orders ..."). Rule 16(f) sanctions were "designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *U.S. v. Samaniego*, 345 F.3d 1280, 1284 (11th Cir. 2003). A court '"has discretion to impose whichever sanction it feels is appropriate under the circumstances' and the decision to award sanctions is 'reviewable under the abuse-of-discretion standard.'" *In re Sanctions Hearing: Jason Saul Remer and Anthony Maximillien Georges-Pierre*, 2012 WL 12888409 *8 (S.D. Fla. Dec. 20, 2012) (citing the 1983 Advisory Committee Notes). "District courts 'have discretion to decide if there is a pattern of delay or a deliberate refusal to comply with court orders or directions that justifies a sanction.'" *In re FLSA Cases*, 2009 WL 129599 *6 (M.D.

Fla. January 20, 2009) (citing *Samaniego*, 345 F.3d at 1284). However, "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995). Bad faith exists when there is delay or disruption of the litigation." *See* Barnes, 158 F.3d at 2014 (citing *Primus Automotive Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir.1997) (internal quotation and citation omitted). Furthermore, a member of the bar of Middle District of Florida "may, after hearing and for good cause shown, be disbarred, suspended, reprimanded or subjected to such other discipline as the Court may deem proper." Local Rule 2.04(a)

Undersigned and FLA attorneys present and past should not be sanctioned as there was no intentional nor willful disregard of the Court's Orders nor ADA Standing Order as attorneys work and have worked to seek compliance with the Court's requirements, be judicially economical and resolve the cases enforcing a Federal mandate in the ADA. At worse, there was excusable neglect that were remedied expeditiously. In addition, FLA has retained additional attorneys and staff and minimized the number of filings to a more manageable number to mitigate past noncompliance and prevent future occurrences.

## **Why Counsel(s) or the Firm Should not be Banned from Filing Additional ADA Cases Before this Court**

The firm and counsels – both former and present – have never intentionally and willfully disregarded this Court's Orders. As previously stated, the firm went through multiple staffing changes and has corrected the staffing issues along with reducing the number of filings in the Middle District that lead to missed deadlines. The barring of the firm and its attorneys from filing ADA cases in the Middle District would lead to further the public places of accommodations discrimination of the disabled and noncompliance with the ADA as there would be less Civil Rights advocates for them.

### In the Alternative what steps can and will be taken immediately to ensure future compliance with this Court's orders and the rules of this Court.

As previously stated the Undersigned, FLA and current attorneys and staff have minimized the cases filed to ensure future compliance. FLA's current associates Michael D. Christine, Esq., and William T. Leveille, Esq., have effectively litigated and brought the current cases up to date in compliance with the Court's ADA Scheduling Order. Additionally, FLA has hired additional staff to ensure compliance with this Court's ADA Scheduling Order and local rules. Currently all of Title III active cases in the Middle District, have been brought into compliance with the Court's ADA Scheduling Order. The two current associates routinely review the cases with their assistants and interns, including holding weekly calendaring meetings ensuring all deadline are known and met. The current assistants to the attorney's calendar every deadline as Order's come in, and the attorney assigned to the case, reviews and ensure the correct date is calendared.

WHEREFORE, Counsel requests that this Honorable Court not discipline nor enter sanctions against him, FLA, past and present attorneys and be excused from any further proceedings.

Respectfully submitted,

By: s/ Mario E. Lopez
Mario E Lopez, Esq.
Fla Bar. No.: 98061
**FEDERAL DISABILITY ADVOCATES**
*Counsel for the Plaintiff*
4300 Biscayne Boulevard, Suite 305
Miami, Florida 33137
Telephone:   (305) 717-7530
Facsimile:    (305) 717-7539
Primary e-mail: mlopez@justice360.com