UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: ADA Cases                                   Case No.: 6:18-MC-14-Orl-31DCI

## ANTHONY J. PEREZ'S RESPONSE TO ORDER TO SHOW CAUSE DATED MAY 1, 2018

Pursuant to the Court's Order to Show Cause date May 1, 2018, the undersigned attorney, Anthony J. Perez, files his Response, as required, and states as follows:

## BACKGROUND INFORMATION

Prior to 2013, our firm, Garcia-Menocal & Perez, P.L.[1] did not have a Plaintiff oriented ADA practice. We primarily handled commercial litigation cases in state court cases. The firm commenced its Plaintiff ADA practice after meeting some disability advocates/Plaintiffs via disabled veterans benefit work that my law partners and I were involved with at the time and after handling an ADA based employment discrimination case involving a disabled veteran with Post Traumatic Stress Disorder in another district. Our firm at that time consisted of three (3) attorneys (all partners in the firm), a paralegal, and a receptionist. As our ADA practice has grown, we have added of-counsel attorneys, an associate and paralegals to meet the growing volume of requirements and deadlines, because of the increased number of ADA cases. We are currently interviewing to add another experienced federal attorney and paralegal to meet the increasing demands of the firm's current ADA caseload and will continue to add legal professionals as our practice grows. As our ADA practice increased and evolved, we also changed certain technological support systems (calendaring programs, billing programs, etc.). We did so not only to ensure zealous advocacy on behalf of our clients, but also in an attempt to increase the efficiency of our practice and to ensure timely compliance with the

---

[1] The Law Firm was named Garcia-Menocal, Cuadra & Perez, P.L. in 2013, but one law partner, Guillermo Cuadra, departed suddenly and without explanation from the firm in 2014. This will be addressed in more detail later in this Response to the Court's Order.

Court's requirements and deadlines. As the head of the firm's litigation practice, I will express my belief that it is never appropriate to ignore a Rule, local Rule, deadline, or Court Order. As a member of this Court, I am appropriately required to do so and ensure strict compliance with the Court's streamlined case management procedures and as such wish to apologize to the Court for my own and my firm's related shortcomings. Be that as it may, I have come up short in meeting some of these requirements, but it has never been willful, intentional or in disregard of the Court's Orders or any applicable Rules. I and my firm have taken aggressive steps in changing calendaring systems and protocols, continuously train firm staff and have hired additional legal professionals in order to more efficiently strictly comply with all Court deadlines, Orders, and applicable rules as detailed in my response below.

## RESPONSE TO THE COURT'S INQUIRIES

I will commence by reiterating that it is never appropriate to miss deadlines in violation of Court Orders, applicable Rules of Civil Procedure and/or Local Rules, and that I understand that I am ultimately responsible for any negative orders issued on my cases. I offer the Court my sincerest apology for my and the law firm's shortcomings in this endeavor and ask to the Court to please note that I have never ignored a deadline and the failure to meet these deadlines has been for a variety of reasons detailed below, but never intentional. None of my explanations below are an attempt to obviate from my responsibility in this capacity as an officer of this Court, but are provided in response, with explanations and reasons, to the Court's Order to Show Cause in regards to four areas the Order requires. The four (4) inquiries posed by the Court are as follows:

1. Why Counsel repeatedly fail to comply with the Court's orders and rules of this Court;

2. What sanctions can or should be imposed as a result of these failures;

3. Why Counsel should not be banned from filing additional ADA cases before this Court; and

4. In the alternative, what steps can and will be taken immediately to ensure future compliance with this Court's orders and the rules of this Court.

There are several reasons why I and the firm have repeatedly come up short in failing to meet these deadlines and to reiterate again, it has never been intentional or in willful disregard of the case orders and relevant rules of the Court. The reasons for these failures to meet deadlines include human error, inexperienced staff, technical issues, inadvertent negligence and related oversight, failure of cooperation from defense counsel, increased workload for staff, and staff not meeting firm requirements and procedures. There are also times that events and their related deadlines have become compromised or that the reaction time minimized because of certain courtesies and extensions we have provided to defense counsel on many cases. There have been some instances when a mediator has been delayed in filing mediation reports, as well. In those instances, we now file Notices of Settlement to advise the Court of the result of mediations. I will inform the Court of the steps, procedures we have either initiated or adjusted to ensure compliance in the future, and other mitigation steps we have taken or will take as I address the shortcomings, essentially responding to Court inquiry numbers one (1) and four (4) together. I will then address Court inquiries number two (2) and three (3). That being said, I believe it significant to note to the Court that much of what it will read in my law partner, Alfredo Garcia-Menocal's, response to the Order to Show Cause will be similar to the content within my response. The reason for this is that we are the only two (2) partners for the firm and our names and e-mails are both on each ADA case filed by our firm since the departure of our former law partner. As a result we are each listed on all the current cases our firm is litigating and both of us work each case. It is not meant to

circumvent the requirement of the Order that we each file an individual response and we are in fact each individually responding in compliance with the Court's Order; nor is it meant to minimize the seriousness of the circumstances involved in not meeting Court requirements in any and all instances. The number of Orders that involve our law firm (Garcia-Menocal & Perez, P.L.) are accordingly not accurately represented by adding up the number of orders listed in the Show Cause Order that are listed for each of us, as we are both listed on the same Orders corresponding to Garcia-Menocal & Perez, P.L.(i.e. they should not be counted twice)[2].

There are twenty (20) negative orders listed for me, which are not included in those listed for Garcia-Menocal & Perez, P.L. and my current law partner. Included within those are negative orders involving a former law partner who disappeared without notice for a couple of months in 2014, presumably because of personal issues. On April 17, 2014, I appeared before the Honorable Judge Roy Dalton and addressed the shortcomings involved in those cases. On that day, I explained to Judge Dalton that while I took responsibility of all shortcomings in those cases as the lead litigation attorney listed on each case, I was not aware of any issues that my law partner was experiencing prior to this and was caught completely off guard when he simply stopped coming in to work and responding to case requirements. As a result, I subsequently personally pushed each pending case that he was handling towards global resolution. They are all closed now. The former law partner did appear about a couple of months after that and the law firm severed relations with him and returned the personal articles he left behind to him (his diplomas, artwork, books, and other personal property). I had not heard anything else about those cases until the this Court's May 1, 2018 Show Cause Order, but ask that this Honorable Court take note that we responded to all questions posed by Judge Dalton and believe that he found cause no to sanction either myself

---

[2] We are strictly trying to be accurate as to the number of negative orders being addressed and are not attempting to minimize the gravity of even one (1) negative order.

<mark>4</mark>

or my former law partner in regards to these negative orders on that day.

The Court also lists an additional number of negative Orders involving missed deadlines either from subsequent Court Orders, Local Rules or Rule of Civil Procedure. Many of these were initially the result of miscalendaring or failing to calendar deadlines and often just simply human error because of the increased ADA case workload. While I have done volume work in the past, it was primarily in insurance defense work. These ADA cases are greatly different in as the deadlines have to pushed by the Plaintiff much more so than Defendants. I have learned much since taking on this endeavor and continue to improve our work product and timeliness with flexibility and constant improvements to our work model and tools. As a result, we came up with and continue to improve upon the following changes:

- The firm hired additional legal personnel and shifted most nonfederal cases to an of counsel attorney.
- We educated our staff on the significance of the deadlines involved with federal litigation and have recently provided a quick reference guide with all calendaring deadline requirements provided in the Local Rules and Rules of Civil Procedure. Our staff understands that failing to calendar a deadline and/or failing to abide by the deadline is a very serious matter and could result in their termination of employment.
- We also hired an additional attorney and two (2) more paralegals. We subsequently (and since February 2018) hired another two (2) paralegals with more extensive litigation experience. This has helped greatly, as we have better control of our calendaring system as a result. We are interviewing for another associate (but with more federal experience at this time) and for another paralegal. This will assist in

ensuring the staff and I have more manageable work and caseloads which will make it easier both to drive and manage the litigation and not be in a reactive, last minute reactionary posture. We have noticed a direct and immediate improvement in the timeliness and quality in work product as a direct result and are trying to anticipate the needs for additional staff, prior to or at least as the need arises in order to avoid the pitfalls and mistakes that occur when our staff is overworked with a case load that is too high.

- We implemented a new calendaring system and transferred all the case deadlines to that system. As a result, several members of our legal team have access to and receive calendars of deadlines and early reminders. However, we are not entirely satisfied with the new calendaring system and are exploring alternative calendaring systems that may be more efficient and allow for easier application and use. We expect to make a decision within the next couple of weeks.

- We conduct weekly meetings where we review the calendar and every case. This has allowed us to complete requirements early more often because it allows us to check individual case requirements and verify whether or not the deadlines and reminders are calendared.

- In addition to this, we have implemented new protocols involving new cases to include putting together drafts to use quickly when responding to Related Case Orders, Certificates of Interested Parties and Court Interrogatories, when cases are assigned to judges that typically issues such requirements. This has been very instrumental in our filing the required responses long before the deadlines. We are additionally asking for a Rule 34 Inspection up front from opposing counsel and

sending the formal Rule 34 Notice if we receive either no response or a response denying the request within a week after receiving either a responsive pleading or Notice of Appearance from Defendant's counsel. This is leading to earlier global resolution on cases and preventing delays from the Defendants and/or their attorneys.

- We are also additionally circulating suggested mediator names when we request the Rule 34 Inspections. We have found that agreeing to a mediator early has several positive effects for the case: it will often lead to the global resolution of a case, prior to the mediation, if a mediation date has been set; it allows for a coordinated date within the Court ordered mediation period/deadline, without necessitating a request for an extension of the deadline form the Court; and it allows for a request for a Court approved mediator early on if the parties cannot agree to a mediator.

- I personally made the mistake of delegating tasks and deadlines maintenance to staff too inexperienced with federal work, to recognize the significance of these deadlines. This problem amplified as the firm's ADA caseload grew. My law partner and I are now linked to every e-mail and calendar involved in each case. Each case is additionally briefed to or by each of us on a weekly basis (monitoring all deadlines existing on the case) and the deadlines are immediately updated on a calendar system accessible to all members of the firm's litigation team. This allows for more substantive interaction with our litigation team members, and allows for the opportunity for my law partner and I to better mentor and provide guidance as to all assigned tasks. We additionally now color code tasks on the new calendaring system we now use to reflect who is tasked with each task's timely completion.

We have filed cases joining and naming both landlords and tenants in regards to ADA Actions involving the properties and businesses on the properties and some have been subject to Orders to Show Cause in regards to whether or not such joinder was proper. Our position, as stated in our responses in regards to the joinder of landlords and tenants in these cases, is a legally sound and viable argument. While the commercial leases the Defendants are operating under may provide that the tenants owe some sort of indemnification to the landlord, both have the same duty in regards to compliance with the law, to include the ADA. Apart from the fact that the landlord is jointly and severally liable with its tenants for areas owned and controlled by the both the landlord the tenants, the Defendants are jointly and severally liable for the ADA violations that form the common nucleus of operative fact in the Action filed for ADA violations for these areas that that landlord owns and the tenant leases. This includes common areas to all Co-Defendants, such as the parking lot, entrance access, paths of travel and common bathrooms, as might be mentioned in a subject Complaint. Furthermore, a landlord cannot separate itself from the liability with its tenant(s), as both parties share any liability for ADA violations proven and the landlord is ultimately responsible for the ADA violations the Plaintiff is claiming, despite contractual indemnification owed from the tenant Defendants to the landlord Defendant.

The issue of whether a landlord may shift its legal responsibility to comply with the ADA to its tenants was comprehensively addressed by the Ninth Circuit in *Botosan v. Paul McNally Realty,* 216 F.3d 827, 832–34 (9th Cir.2000). The Ninth Circuit found that, because the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation," *see* § 12182(a), "[t]he express terms of the ADA hold a landlord liable for noncompliance."*Botosan,* 216 F.3d at 832. The court also noted that the ADA prohibits discrimination that is conducted "directly, or through contractual, licensing, or other

arrangements." *Id.* at 833 (quoting § 12182(b)(1)(A)(I)). After analyzing the legislative history of these provisions, that Court concluded that the congressional intent "confirms that a landlord has an independent obligation to comply with the ADA that may not be eliminated by contract." *Id.* In *Botosan,* the Ninth Circuit also found that its interpretation of the ADA was supported by that of the Department of Justice ("DOJ"). A regulation promulgated by the DOJ provides:

> Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part.

In addition, the DOJ's Technical Assistance Manual, which states:

> Both the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title III requirements applicable to that place of public accommodation. The title III regulation permits the landlord and the tenant to allocate responsibility, in the lease, for complying with particular provisions of the regulation.

However, any allocation made in a lease or other contract is only effective as between the parties, and both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation.

*As between the parties,* this Court has in the past ruled that the allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract. 28 C.F.R. § 36.201(b) (emphasis added). In the end, although this regulation allows a landlord and tenant to allocate responsibility for complying with the ADA in their lease, because any such allocation is effective only "between the parties," the terms of the lease will not affect the rights of a third party who brings suit under the ADA. *Howeischer v. Terry*, WL 5510274 (M.D. Fla. 2011) (citing *Botosan v. Paul McNally Realty,* 216 F.3d 827, at 833 (9th Cir.2000). This makes it arguably imprudent not to name both a landlord and its tenant(s) when a Title III ADA lawsuit

involves a tenant's place of public accommodation. Furthermore, to file separate cases when the parties are arguably jointly and severally responsible for the areas where the ADA violations sit may lead to incompatible and inconsistent results regarding the same ADA violations for which they are commonly responsible. In addition to this, injunctive relief may not be available without both the landlord and tenant(s) Defendant(s) being a part of the Action and an argument can be made as to their being indispensable parties in regards to ADA Actions involving common tenant leased areas owned by the landlord. Furthermore, the Court would be forced to unnecessarily expend limited resources in administering to two (2) or three (3) separate cases or more, involving common issues of fact and law that all stem from the same alleged ADA noncompliance, if the parties are not joined in the same Action. In regards to an Action being settled or dismissed during the pendency any Order, undersigned counsel was under the belief that if such a Notice of the global resolution of the case results in the Court dismissing the case and mooting all pending deadlines and requirements, then nothing else would remain to be done. I can ask for more clarity should such an instance ever arise in the future, but all parties joined in our firms cases are reviewed for proper joinder in regards to what was stated above.

    The Court in the Show Cause Order also expresses concern about "boilerplate complaints." We are constantly improving upon our approach and drafting of documents for all legal proceedings, to include the ADA Complaints we file. We review the Complaints once drafted with the sources and research for our allegations as listed in the Complaint. We often contact experts to verify whether or not the barriers we are listing in our Complaints present ADA violations to access in regards to any Defendants we are proposing to list. We tailor each Complaint to the facts of each case before we file them. There is admittedly quite a bit of overlap in some of the Complaints' language, but that is in the interest of efficiency and such common

language is changed if it does not apply to that specific case.

The Court asks what sanctions can or should be imposed as a result of these failures and I am not questioning the Court authority to impose any such sanction. Despite the shortcomings mentioned in the Court's Show Cause Order and as detailed in my response, I respectfully and humbly request that no such sanction be imposed against me at this time. That being said, I believe it appropriate to defer to this Court for a determination as to whether any sanction should be imposed and if so, what it should be. I ask that the Court in evaluating this consider the steps that I and my law firm have already taken to remedy the situation that have detailed above and for the most part implemented prior to the Show Cause Order and the fact that the errors have not been intentional or meant to be disrespectful to the Court or anyone else. I also ask that the Court note that after each response to a Show Cause Order, the Court has found good cause to dismiss said Orders with the exception of one (1) case that was handled by my former law partner who has not practiced in federal court since April 2014 and is no longer with my firm.

I would also ask that the Court consider the fact that this Order is the source of great personal and professional embarrassment to me and has been an extremely sore subject and topic of much discussion at my law firm. The Order itself and the public nature of it already acts as an admonishment. Peers and even opposing counsel have brought it up in discussing cases and even during settlement negotiations in some instances, to my great embarrassment. I take great pride in the privilege to practice law in Federal Court and recognize that the Middle District of Florida has a long and honored past. I would respectfully ask that if the Court believes it proper to take further action, that it re-evaluate my record of compliance within the next three (3) to six (6) months. I am confident that the Court will see that we have eliminated deadline compliance problems within my practice and that of my firm's.

I respectfully request that I not be banned by the court from filing additional ADA cases in this District. The disabled Plaintiffs my firm and I represent would probably not have a voice if not for the ADA advocacy that is engaged with them and on their behalf. This area of law is unique in many ways, and is the primary way that the ADA is enforced against the arguably 70% of places of public accommodation that remain in patent violation of the Act. We initially filed a few ADA cases with the intent of helping a couple disabled individuals (one of whom was disabled Vietnam era veteran) prosecute their discrimination claims against public establishments that were in patent violation the relevant access requirements under the ADA. Litigating these ADA cases provides a sense of validation to them when they believe their collective voice is being heard. I enjoy and am proud of being a part of that solution.

We strongly believe that we have eliminated the major causes for these problems within our firm and have established a good team in our litigation division that have eliminated these deadline issues and will continue to improve upon our litigation process, so as to prevent us from repeating the past shortcomings and failures. For the aforementioned reasons, I respectfully request that we not be banned from filing additional ADA cases before this Honorable Court.

I am more than willing to appear to before the Court to respond to any additional questions or address any required further comment(s) on any issues the Court may require. My law partner and I are each requesting that we appear before the Court together, as we work our cases in that manner and would be in a better position to more thoroughly respond to and answer any questions the Court may require us to address.

Respectfully submitted this 25th day of May, 2018

                      **GARCIA-MENOCAL, & PEREZ, P.L.**
                      4937 SW 74th Court, No.3
                      Miami, FL 33155
                      Telephone: (305) 553-3464
                      Facsimile: (305) 553-3031
                      Primary E-Mail: ajperezlaw@gmail.com

By:    /s/ *Anthony J. Perez*
        ANTHONY J. PEREZ
        Florida Bar No.: 535451

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on May 25th, 2018, I electronically filed a true and correct copy of the forgoing with the Clerk of Court using the CM/ECF system which will serve notice of the electronic filing upon all parties of record.

                      Respectfully submitted,

                      **GARCIA-MENOCAL, & PEREZ, P.L.**
                      4937 SW 74th Court, No.3
                      Miami, FL 33155
                      Telephone: (305) 553-3464
                      Facsimile: (305) 553-3031
                      Primary E-Mail: ajperezlaw@gmail.com

By:    /s/ *Anthony J. Perez*
        ANTHONY J. PEREZ
        Florida Bar No.: 535451