**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In Re: ADA Cases**                                              **Case No:  6:18-mc-14-Orl-31DCI**

_____

**REPORT AND RECOMMENDATION**

This cause comes before the Court for consideration following oral argument on the written

responses to the undersigned's May 1, 2018 Order to Show Cause.  Doc. 4 (the Order to Show

Cause).

## I.      Introduction

This case concerns several attorneys' repeated failure to comply with the Federal Rules of

Civil Procedure, the Local Rules, and the Court's orders.   The matter was referred to the

undersigned for the issuance of a report recommending what, if any, actions should be taken

against the attorneys for their noncompliance.  As a result, the undersigned entered an Order to

Show Cause directing each attorney to show cause why the Court should not take adverse action

against them based on their history of noncompliance.  After reviewing the attorneys' responses

to the Order Show Cause, the undersigned held show cause hearings for each attorney.

Upon review of the attorneys' written and oral responses to the Order to Show Cause, the

undersigned identified three areas of concern: 1) the repeated failure to comply with the Federal

Rules of Civil Procedure, the Local Rules, and the Court's orders; 2) the filing of deficient

pleadings and substantive motions; and 3) the use of ADA experts.  As for the first area of concern,

the undersigned recommends the following actions be taken: four of the attorneys at issue be

admonished and subject to temporary oversight to ensure compliance; six of the attorneys at issue

be subject to temporary oversight to ensure compliance; and no further action be taken as to six of

the attorneys at issue.  The undersigned recommends that no action be taken against the attorneys for the issues related to the second and third areas of concern.

## II.    Background

On February 20, 2018, United States District Judge Roy B. Dalton, Jr. entered an order directing the initiation of these proceedings concerning the conduct of the law firm of Thomas B. Bacon, P.A. and certain of its attorneys and co-counsel in litigation in this Division involving the Americans with Disabilities Act (ADA).  Doc. 1.  According to the order, Senior United States District Judge Gregory A. Presnell was designated to preside over these proceedings, and the matter was referred to the undersigned for issuance of an appropriate show cause order and recommendation to the Court.  *Id*.  In two subsequent orders, Judge Presnell identified eleven additional attorneys litigating ADA cases in this Division who are the subject of these proceedings. Docs. 2; 3.

In each of those orders, the district judges explained that counsel "have filed numerous ADA cases in this court over the past few years.  In its attempt to efficiently deal with these cases, the Court has been using a streamlined case management procedure with which the Court expects strict compliance.  Notwithstanding this admonition, [counsel] routinely fail to comply with the Court's orders."  Docs. 1; 2; 3.  Thus, those orders made clear that these proceedings were focused on the conduct of the attorneys who routinely file ADA cases in this Division, and not on the merit of the claims asserted in those ADA cases.  *Id*.

As it stands, this matter involves attorneys Thomas B. Bacon, Philip M. Cullen, III, Aaron Finesilver, Christine N. Failey, Barry S. Mittelberg, Ayesa Conger, Eric Matthew Rodriguez, Joshua Howard Sheskin, Mario Elias Lopez, Rafael Viego, III, Nadine A. Brown, Andrew C.

Enfield, William T. Leveille, II, Michael Christine, Anthony J. Perez, and Alfredo Miguel Garcia-Menocal. *Id.*

On May 1, 2018, the undersigned entered an Order to Show Cause, in which the undersigned outlined the Court's concerns with the attorneys' collective history of negative orders. Doc. 4 (the Order to Show Cause). Specifically, the Order to Show Cause and the exhibit thereto identified numerous negative orders stemming from the attorneys' repeated failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, as well as orders directed to consistently deficient pleadings and motions. *Id.* In light of these negative orders, the undersigned directed each attorney to show cause in writing: 1) why the attorney repeatedly failed to comply with the Court's rules and orders; 2) what sanctions can or should be imposed as a result of those failures; 3) why the attorney should not be banned from filing additional ADA cases before this Court; and 4) what steps can and will be taken to ensure future compliance with the Court's rules and orders. *Id.* at 5.

The attorneys filed timely written responses to the Order to Show Cause. Docs. 5; 6; 9; 10; 11; 12; 13; 14; 15; 16; 17; 18; 19; 20; 21; 22. In their responses, the attorneys addressed: 1) the negative orders they assert should not be considered in these proceedings; 2) the negative orders they assert are not attributable to them; 3) the negative orders they concede are attributable to them; 4) the measures they have taken to avoid negative orders in the future; and 5) why sanctions should not be imposed. *Id.* In addition to addressing the issues raised in the Order to Show Cause, Mr. Sheskin's response raised an issue that was not previously apparent from the negative orders giving rise to these proceedings, namely the alleged improper reliance on ADA experts by his former law firm, Federal Legal Advocates, LLC (FLA). Doc. 19 at 5, 8, 13-14.

Upon review of the written responses, it became clear that there were three law firms at the center of these proceedings: FLA; Thomas B. Bacon, P.A.; and Garcia-Menocal & Perez, P.L. Thus, the undersigned scheduled separate show cause hearings for the attorneys associated with the foregoing law firms.

On August 14, 2018, the undersigned held the first show cause hearing, which involved attorneys who worked for FLA.  Docs. 34; 36.  Specifically, the attorneys who appeared at this hearing were Mr. Lopez, Ms. Conger, Mr. Viego, Mr. Christine, Mr. Sheskin, Mr. Leveille, and Mr. Rodriguez.

That same day, the undersigned held the second show cause hearing, which involved attorneys who worked for or in association with Thomas B. Bacon, P.A.  Docs. 35; 37. Specifically, the attorneys who appeared at this hearing were Mr. Cullen, Mr. Finesilver, Ms. Failey, Ms. Brown, and Mr. Enfield.[1]  The undersigned heard from Mr. Bacon on a later date. Docs. 32; 40; 41.

On August 15, 2018, the undersigned held the third show cause hearing, which involved attorneys who worked for Garcia-Menocal & Perez, P.L.  Docs.  38; 39.  Specifically, the attorneys who appeared at this hearing were Messrs. Garcia-Menocal and Perez.

At the hearings, the attorneys provided much of the same arguments and explanations contained in their written responses.  In addition, the undersigned asked each attorney several questions about the negative orders discussed in the Order to Show Cause, how they use experts in ADA cases, and the measures they have taken to avoid the issues giving rise to these proceedings.

---

[1] Based on Mr. Mittelberg's response (Doc. 6) to the Order to Show Case, the undersigned found it unnecessary to require Mr. Mittelberg to appear at the show cause hearing.

### III.   The Court's Authority to Conduct These Proceedings

The Court draws its authority to conduct these proceedings from two distinct sources.

First, it is axiomatic that "lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct." *In re Gopman*, 531 F.2d 262, 266 (5th Cir. 1976).[2]  Specifically, the Eleventh Circuit has explained that:

> Courts possess the inherent power to protect the orderly administration of justice and to preserve the dignity of the tribunal.  The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. A trial court possesses the inherent power to discipline counsel for misconduct, short of behavior giving rise to disbarment or criminal censure, without resort to the powers of civil or criminal contempt.

*Kleiner v. First National Bank*, 751 F.2d 1193, 1209 (11th Cir. 1985) (internal citations and quotation marks omitted); *see Wouters v. Martin Cty., Fla.*, 9 F.3d 924, 933 (11th Cir. 1993) ("district courts have broad powers under the rules to impose sanctions for a party's failure to abide by court orders. . ."). "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).  "When considering sanctions under the court's inherent power, the threshold of bad faith conduct is at least as high as the threshold of bad faith conduct for sanctions under [28 U.S.C.] § 1927." *Peer v. Lewis*, 606 F.3d 1306, 1316 (11th Cir. 2010) (internal quotation marks omitted).

Second, the Court has authority to conduct these proceedings pursuant to its Local Rules, which state, in relevant part, that "[a]ny member of the bar of this Court, admitted generally under Rule 2.01 or specially under Rule 2.02, may, after hearing and for good cause shown, be disbarred,

---

[2] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

suspended, reprimanded or subjected to such other discipline as the Court may deem proper." Local Rule. 2.04(a).

In light of the foregoing, the undersigned finds that the Court has the authority to conduct these proceedings and may take reasonable and appropriate actions against the attorneys involved in these proceedings to ensure the orderly administration of justice and to preserve the dignity of the tribunal, both under the Court's inherent authority and pursuant to its Local Rules.[3] Ultimately, though, the undersigned's recommendations, which include the impositions of sanctions against some of the attorneys at issue, are predicated on the Court's authority under Local Rule 2.04(a).

## IV.   Discussion

After reviewing the negative orders giving rise to these proceedings and considering the written and oral responses to the Order to Show Cause, the undersigned has identified three issues that merit discussion: 1) the repeated failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders; 2) the filing of consistently deficient pleadings and substantive motions; and 3) the use of ADA experts.  The undersigned will address each issue in turn.

---

[3] The undersigned notes that Mr. Cullen was the only attorney who challenged the Court's authority to conduct these proceedings.  Mr. Cullen, however, did not raise this challenge in his written response to the Order to Show Cause.  *See* Doc. 15.  Instead, Mr. Cullen waited until the show cause hearing to challenge the Court's authority to conduct these proceedings.  Specifically, Mr. Cullen argued that the Court did not have jurisdiction to conduct these proceedings because other courts in this Division had already resolved the negative orders giving rise to these proceedings.  First, the undersigned finds that Mr. Cullen waived this argument by not raising it in his written response to the Order to Show Cause.  Second, to the extent Mr. Cullen did not waive the argument, the undersigned finds it to be without merit.  As discussed above, the Court has both the inherent authority and the authority through its Local Rules to conduct proceedings, such as these, to regulate and, if warranted, sanction the attorneys who appear before the Court.  *See* Local Rule 2.04(a); *Kleiner*, 751 F.2d at 1209; *In re Gopman*, 531 F.2d at 266.  Indeed, Mr. Cullen has cited no binding or persuasive authority to the contrary.  Therefore, the undersigned finds Mr. Cullen's argument meritless.

**A.  The Failure to Comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's Orders**

The primary issue giving rise to these proceedings was the attorneys' collective history of not complying with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. *See* Docs. 1; 2; 3.  This remains the primary issue in these proceedings, and, as discussed below, the undersigned finds that additional actions should be taken as to many of the attorneys to ensure that they will comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

While many of the attorneys have challenged the precise number of negative orders attributable to them due to the failure to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders, there is no dispute that each attorney subject to this action has failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders on one or more occasions.  Indeed, in response to the Order to Show Cause, the attorneys either expressly or implicitly conceded this fact.

The attorneys provided several explanations for their noncompliance, including, but not limited to, their workload (i.e., the filing of an excessive number of cases), insufficient staffing, and insufficient systems in place to track deadlines.  While many of the explanations account for the failure to follow deadlines, they offer little, if any, justification for the failure to comply with the Federal Rules of Civil Procedure or the Local Rules, with which the Court expects strict compliance.  In any event, there is no question that the issues allegedly giving rise to the noncompliance are squarely within each attorney's control, and, consequently, there is little excuse for the ongoing compliance issues that gave rise to these proceedings.

In response to these proceedings, the attorneys have reportedly taken various measures to ensure compliance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's

orders.  These measures include, but are not limited to, reviewing the applicable rules, reducing case load, hiring additional attorneys and support staff, and implementing new systems to ensure all deadlines are met.  In theory, these measures should ensure compliance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Indeed, since the inception of these proceedings, there has been a noticeable decline in the number of negative orders entered due to noncompliance.  This decline not only demonstrates the necessity of these proceedings, but also demonstrates that the attorneys are capable of compliance.  That said, it remains unclear whether the attorneys will continue to follow through with the measures they have implemented (especially once these proceedings are closed) and, to the extent they do, how effective those measures will be in bringing about consistent compliance with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Therefore, as discussed below, the undersigned finds that additional actions should be taken as to many of the attorneys to ensure that they will comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 1.  Mr. Bacon

The undersigned finds that Mr. Bacon should be admonished and subject to temporary court oversight for four principal reasons.

First, Mr. Bacon repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Indeed, Mr. Bacon conceded this fact.  Doc. 21-1.

Second, Mr. Bacon served as a supervising attorney and, as such, was (and remains) responsible for ensuring that the attorneys he supervised complied with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Mr. Bacon fell short in meeting this responsibility, and, as a result, the attorneys he supervised repeatedly failed to comply with the

Federal Rules of Civil Procedure, the Local Rules, and the Court's orders on numerous occasions. Again, Mr. Bacon conceded this fact. *See id.*

Third, it appears that Mr. Bacon intends to continue litigating cases and supervising attorneys who litigate cases in this Division, and, thus, the possibility for further compliance issues remains. *See* Doc. 21 at 32.

Fourth, despite the measures Mr. Bacon has reportedly taken to ensure compliance, he has nevertheless had a negative order entered against him since the Order to Show Cause was entered. *Kennedy v. Milan Properties, Inc.*, Case No. 6:18-cv-427-Orl-22DCI, Doc. 23 (M.D. Fla. July 18, 2018) (order to show cause against plaintiff for failing to timely file answers to the Court's interrogatories). Thus, it is not clear whether the measures Mr. Bacon (and Thomas P. Bacon, P.A.) has put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Mr. Bacon to be admonished to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders and be subject to temporary court oversight (discussed in detail below) to ensure that he and the attorneys he supervises comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 2. Mr. Lopez

The undersigned finds that Mr. Lopez should be admonished and subject to temporary court oversight for four principal reasons.

First, Mr. Lopez repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Second, Mr. Lopez served as a supervising attorney at FLA and, as such, was (and remains) responsible for ensuring that the attorneys he supervised complied with the Federal Rules of Civil

Procedure, the Local Rules, and the Court's orders.   Mr. Lopez fell short in meeting this responsibility, and, as a result, the attorneys he supervised repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders on numerous occasions. Indeed, Mr. Lopez conceded this fact.   Doc. 42 at 36.

Third, it appears that Mr. Lopez intends to continue litigating cases and supervising attorneys who litigate cases in this Division, and, thus, the possibility for further compliance issues remains.  *See* Doc. 11 at 6.

Fourth, despite the measures Mr. Lopez has reportedly taken to ensure compliance, he has had multiple negative orders entered against him and those he supervises since the Order to Show Cause was entered.  *Longhini v. Rayan and Assocs., Inc.*, Case No. 6:17-cv-1016-Orl-37GJK, Doc. 40 (M.D. Fla. Oct. 29, 2018) (order to show cause why the case should not be dismissed for failure to prosecute); *Longhini v. Avenue Shoppes, LLC*, Case No. 6:16-cv-1444-Orl-40GJK, Doc. 54 (M.D. Fla. Oct. 23, 2018) (order to show cause why motion to dismiss should not be granted as unopposed due to plaintiff's failure to file a timely response to the motion to dismiss); *Longhini v. Congo River Golf & Exploration, Co.*, Case No. 6:17-cv-1445-Orl-31KRS, Doc. 40 (M.D. Fla. July 10, 2018) (order dismissing case for parties' failure to comply with the case management and scheduling order); *Longhini v. Gala Enters. Of Central Florida, Inc.*, Case No. 6:17-cv-1444-Orl-37KRS, Doc. 53 (M.D. Fla. July 5, 2018) (order to show cause why the case should not be dismissed for failure to prosecute).   Considering the number of negative orders entered against Mr. Lopez since the Order to Show Cause was entered, the undersigned is skeptical that the measures Mr. Lopez (and FLA) has reportedly put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Mr. Lopez to be admonished to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders and be subject to temporary court oversight (discussed in detail below) to ensure that he and the attorneys he supervises comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 3.  Messrs. Garcia-Menocal and Perez

The undersigned finds that Messrs. Garcia-Menocal and Perez should be admonished and subject to temporary court oversight for four principal reasons.

First, Messrs. Garcia-Menocal and Perez repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.  Indeed, Messrs. Garcia-Menocal and Perez conceded this fact.  Docs. 13 at 3; 14 at 2.

Second, Messrs. Garcia-Menocal and Perez are principals at Garcia-Menocal & Perez, P.L and, thus, have total control over filing and litigating cases (including ADA cases) in this Division. Yet, despite the number of negative orders filed against them for noncompliance, they seemingly took little, if any, action to ensure compliance because they continued to fail to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Third, it appears that Messrs. Garcia-Menocal and Perez intend to continue litigating cases in this Division, and, thus, the possibility for further compliance issues remains.  *See* Docs. 13 at 12; 14 at 3-4.

Fourth, despite the measures Messrs. Garcia-Menocal and Perez have reportedly taken to ensure compliance, they have had multiple negative orders entered against them since the Order to Show Cause was entered.  *Brito v. O P realty Partners, LLC*, Case No. 6:17-cv-2160-Orl-22TBS, Doc. 25 (M.D. Fla. Oct. 18, 2018) (order dismissing case for lack of prosecution);

*Longhini v. The Cypress Pointe Resort at Lake Buena Vista Condominium Assoc., Inc.*, Case No. 6:18-cv-1010-Orl-22TBS, Doc. 17 (M.D. Fla. Oct. 11, 2018) (order denying motion for failure to comply with Local Rule 3.01(g)); *Longhini v. Big Lots Stores, Inc.*, Case No. 6:17-cv-2129-Orl-22TBS, Doc. 21 (M.D. Fla. July 24, 2018) (order to show cause against plaintiff for failing to file a notice informing the Court about the outcome of mediation); *Brito v. 4018 W. Vine Street LLLP*, Case No. 6:18-cv-177-Orl-41TBS, Doc. 21 (M.D. Fla. May 30, 2018) (order striking notice of voluntary dismissal for failure to comply with Federal Rule of Civil Procedure 41(a)(1)(A)); *Longhini v. Lakeside Operating Partnership, L.P.*, Case No. 6:17-cv-1651-Orl-31GJK, Doc. 15 (M.D. Fla. May 23, 2018) (order to show cause why the case should not be dismissed for not timely moving for default judgment).  Considering the number of negative orders entered against Messrs. Garcia-Menocal and Perez since the Order to Show Cause was entered, the undersigned is skeptical that the measures they have reportedly put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Messrs. Garcia-Menocal and Perez to be admonished to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders and be subject to temporary court oversight (discussed in detail below) to ensure that they comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 4. Ms. Failey

The undersigned finds that Ms. Failey should be subject to temporary court oversight for three principal reasons.

First, Ms. Failey failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders on multiple occasions.  Indeed, Ms. Failey conceded this fact.  Doc. 9 at 6-9.

Second, it appears that Ms. Failey intends to continue litigating cases in this Division, and, thus, the possibility for further compliance issues remains.  *See* Doc. 9 at 11.

Third, despite the measures Ms. Failey has reportedly taken to ensure compliance, she has nevertheless had a negative order entered against her since the Order to Show Cause was entered. *Kennedy v. Milan Properties, Inc*., Case No. 6:18-cv-427-Orl-22DCI, Doc. 23 (M.D. Fla. July 18, 2018) (order to show cause against plaintiff for failing to timely file answers to the Court's interrogatories).  Thus, it is not clear whether the measures Ms. Failey has put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Ms. Failey to be subject to temporary court oversight (discussed in detail below) to ensure that she complies with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 5.  Mr. Leveille

The undersigned finds that Mr. Leveille should be subject to temporary court oversight for three principal reasons.

First, Mr. Leveille became a member of the bar of this Court in December 2017.  Doc. 20 at 1.  Within a relatively short period of time after being admitted to the bar of this Court, Mr. Leveille had an instance of noncompliance,[4] for which he has taken responsibility.  *Id*.

---

[4] An order to show cause was entered against Mr. Leveille approximately four months after he became a member of the bar of this Court.  *Longhini v. Orlando CC Hotel, LP*, Case No. 6:17-cv-1057-Orl-37RBD, Doc. 38 (M.D. Fla. Mar. 30, 2018) (order to show cause why case should not be dismissed due to plaintiff's failure to comply with the court's orders and to prosecute the case).

Second, it appears that Mr. Leveille intends to continue litigating cases in this Division, and, thus, the possibility for further compliance issues remains.  *See* Doc. 20 at 3-4.

Third, despite the measures Mr. Leveille have reportedly taken to ensure compliance, he has had two negative orders entered against him since the Order to Show Cause was entered. *Longhini v. Avenue Shoppes, LLC*, Case No. 6:16-cv-1444-Orl-40GJK, Doc. 54 (M.D. Fla. Oct. 23, 2018) (order to show cause why motion to dismiss should not be granted as unopposed due to plaintiff's failure to file a timely response to the motion to dismiss); *Longhini v. Congo River Golf & Exploration, Co.*, Case No. 6:17-cv-1445-Orl-31KRS, Doc. 40 (M.D. Fla. July 10, 2018) (order dismissing case for parties' failure to comply with the case management and scheduling order). Thus, it is not clear whether the measures Mr. Leveille has put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Mr. Leveille to be subject to temporary court oversight (discussed in detail below) to ensure that he complies with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 6. Mr. Christine

The undersigned finds that Mr. Christine should be subject to temporary court oversight for two principal reasons.

First, it appears that Mr. Christine intends to continue litigating cases in this Division, and, thus, the possibility for compliance issues, which, as discussed below, have occurred since the Order to Show Cause was entered, remains.  *See* Doc. 12 at 2-3.

Second, while Mr. Christine has demonstrated that he was not subject to any negative orders for noncompliance prior to the Order to Show Cause, *see* Doc. 12, he has had two negative orders for noncompliance entered against him since the Order to Show Cause was entered.

*Longhini v. Rayan and Assocs., Inc.*, Case No. 6:17-cv-1016-Orl-37GJK, Doc. 40 (M.D. Fla. Oct. 29, 2018) (order to show cause why the case should not be dismissed for failure to prosecute); *Longhini v. Gala Enters. Of Central Florida, Inc.*, Case No. 6:17-cv-1444-Orl-37KRS, Doc. 53 (M.D. Fla. July 5, 2018) (order to show cause why the case should not be dismissed for failure to prosecute).   Thus, since the Order to Show Cause was entered, Mr. Christine has had issues complying with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders. Therefore, it is not clear whether the measures Mr. Christine has put in place to ensure compliance will, in fact, achieve that goal.

For these reasons, the undersigned finds that there is good cause for Mr. Christine to be subject to temporary court oversight (discussed in detail below) to ensure that he complies with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

### 7.  Messrs. Cullen, Sheskin, and Viego

The undersigned finds that Messrs. Cullen, Sheskin, and Viego should be subject to temporary court oversight for two principal reasons.

First, Messrs. Cullen, Sheskin,[5] and Viego repeatedly failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Second, it appears that Messrs. Cullen and Sheskin intend to continue litigating cases in this Division, and, thus, the possibility for further compliance issues remains.  *See* Docs. 15 at 8; 19 at 19-20.  That said, Messrs. Cullen and Sheskin have not been the subject of any negative

---

[5] In August 2017, Mr. Sheskin left FLA, and he subsequently became employed at a law firm where he, in relevant part, defends against ADA and FLSA actions.  Doc. 19 at 19.  Thus, while Mr. Sheskin will apparently no longer be filing ADA actions, he is currently, and will more than likely continue, to practice before this Court.  *Bartley v. Lights N More Installations, LLC.*, Case No. 6:18-cv-775-Orl-40KRS (M.D. Fla.) (pending FLSA action).

orders since the Order to Show Cause was entered.[6]  While it appears that the measures Messrs. Cullen and Sheskin have taken to ensure compliance are having the desired effect, the undersigned has serious concerns whether that compliance will continue given their history of negative orders.

As for Mr. Viego, he currently is not counsel of record in any cases pending in this Division.  Further, Mr. Viego left FLA and now works for a law firm that, according to Mr. Viego, does not take on a large volume of federal cases.  Doc. 5 at 10.  Nevertheless, it appears that Mr. Viego may continue litigating cases in this Division in the near future.  *See id*.  That said, Mr. Viego has not been the subject of any negative orders since the Order to Show Cause was entered. While it appears that the measures Mr. Viego has taken to ensure compliance are having the desired effect, the undersigned has serious concerns whether that compliance will continue given his history of negative orders and the absence of pending cases in this Division.

For these reasons, the undersigned finds that there is good cause for Messrs. Cullen, Sheskin, and Viego to be subject to temporary court oversight (discussed in detail below) to ensure that they continue to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

---

[6] The undersigned notes that while Mr. Sheskin left FLA in August 2017, he still appears as attorney of record in several cases in which negative orders were entered following the Order to Show Cause.  *Longhini v. Rayan and Assocs., Inc.*, Case No. 6:17-cv-1016-Orl-37GJK, Doc. 40 (M.D. Fla. Oct. 29, 2018); *Longhini v. Avenue Shoppes, LLC*, Case No. 6:16-cv-1444-Orl-40GJK, Doc. 54 (M.D. Fla. Oct. 23, 2018); *Longhini v. Congo River Golf & Exploration, Co.*, Case No. 6:17-cv-1445-Orl-31KRS, Doc. 40 (M.D. Fla. July 10, 2018); *Longhini v. Gala Enters. Of Central Florida, Inc.*, Case No. 6:17-cv-1444-Orl-37KRS, Doc. 53 (M.D. Fla. July 5, 2018).  There are no filings signed by Mr. Sheskin in those cases that post-date August 2017.  *See id*.  Thus, it appears that Mr. Sheskin simply failed to move to withdraw from the foregoing cases, two of which remain open (6:16-cv-1444 and 6:17-cv-1016).  Therefore, the undersigned has not counted the negative orders in the foregoing cases against Mr. Sheskin.  That said, Mr. Sheskin should take immediate action to withdraw from the cases that remain open.

### 8.  Mr. Mittelberg and Ms. Brown

The undersigned finds that the Order to Show Cause should be discharged, and no further action should be taken against Mr. Mittelberg and Ms. Brown for two principle reasons.

First, while the Court takes each instance of noncompliance seriously, Mr. Mittelberg and Ms. Brown have had a relatively limited number of negative orders entered against them for failing to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders.

Second, it appears that Mr. Mittelberg and Ms. Brown intend to continue litigating cases in this Division.  *See* Doc. 10 at 4; *Ortiz v. Mastercorp, Inc.*, Case No. 6:17-cv-2004-Orl-28GJK (M.D. Fla.) (a pending employment discrimination case in which Mr. Mittelberg represents the plaintiff).  Thus, there is a possibility for further compliance issues.  That said, Mr. Mittelberg and Ms. Brown have not been the subject of any negative orders since the Order to Show Cause was entered.  Considering the limited number of negative orders entered against Mr. Mittelberg and Ms. Brown and the absence of additional negative orders since the Order to Show Cause was entered, it appears that the measures they have taken to ensure compliance have and will continue to ensure that the issues that caused the limited number of past negative orders will not reoccur.

For these reasons, the undersigned finds that the Order to Show Cause should be discharged, and no further action should be taken against Mr. Mittelberg and Ms. Brown.

### 9.  Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield

The undersigned finds that the Order to Show Cause should be discharged, and no further action should be taken against Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield for two principle reasons.

First, while Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield failed to comply with the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders on several

occasions, they have not been the subject of any negative orders since the Order to Show Cause was entered.[7]

Second, Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield have either ceased practicing law or are unlikely to practice law before this Court. Specifically, Ms. Conger has ceased practicing law due to a progressive disability and has no plans to return to the practice of law. Doc. 16 at 6. As for Messrs. Finesilver, Rodriguez, and Enfield, they left the law firms at the center of these proceedings and now work for law firms that focus on state court litigation. Docs. 17 at 10-11; 18 at 3; 22 at 8-9. Thus, it appears unlikely that the Court will have further issues with Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield within the time contemplated by the temporary oversight recommended in this Report.

For these reasons, the undersigned finds that the Order to Show Cause should be discharged, and no further action should be taken against Ms. Conger and Messrs. Finesilver, Rodriguez, and Enfield.

---

[7] Ms. Conger stated that she ceased working for FLA in January 2018. Doc. 16 at 1. Further, Ms. Conger stated that she has ceased practicing law due to a progressive disability. *Id*. at 6. The undersigned, however, notes that Ms. Conger still appears as attorney of record in several cases in which negative orders were entered following the Order to Show Cause. *Longhini v. Avenue Shoppes, LLC*, Case No. 6:16-cv-1444-Orl-40GJK, Doc. 54 (M.D. Fla.); *Longhini v. Rayan and Assocs., Inc.*, Case No. 6:17-cv-1016-Orl-37GJK, Doc. 40 (M.D. Fla.); *Gala Enters. Of Central Florida, Inc.*, Case No. 6:17-cv-1444-Orl-37KRS, Doc. 53 (M.D. Fla.); *Longhini v. Congo River Golf & Exploration, Co.*, Case No. 6:17-cv-1445-Orl-31KRS, Doc. 40 (M.D. Fla.). There are no filings in the foregoing cases from Ms. Conger that post-date January 2018. *See id*. Thus, it appears that Ms. Conger simply failed to move to withdraw from the foregoing cases, two of which remain open (6:16-cv-1444 and 6:17-cv-1016). Considering Ms. Conger's written and oral response, the undersigned has no reason to doubt that Ms. Conger has left FLA and has ceased practicing law. Thus, the undersigned has not counted the negative orders in 6:16-cv-1444 and 6:17-cv-1016 against Ms. Conger. That said, Ms. Conger should take immediate action to withdraw from the cases that remain open.

### B.  The Filing of Consistently Deficient Pleadings and Substantive Motions

A review of the ADA cases filed by the attorneys in these proceedings revealed that a fair number of negative orders were entered due to deficient pleadings and briefing.  Specifically, there were several common issues giving rise to these negative orders that did not relate to the substantive arguments in the case, including, but not limited to, the reliance on form pleadings despite previous orders criticizing such pleadings, the failure to cite contrary authority, and the failure to file memorandums of law in support of substantive motions, such as motions for default judgment.  *See*, *e.g.*, *Longhini v. Sembler*, Case No. 6:17-cv-2093-Orl-37TBS, Docs. 19; 27 (M.D. Fla.); *Houston v. Fifo, Inc.*, Case No. 6:17-cv-1082-Orl-37DCI, Docs. 16; 18 (M.D. Fla.); *Kennedy v. Taco City 3, Inc.*, Case No. 6:17-cv-634-Orl-40DCI, Docs. 16; 18 (M.D. Fla.).  These issues were easily avoided through better pleadings and more thorough motions, yet the same issues continued to occur in subsequent ADA cases.  *Id*.  While the attorneys should make every effort to avoid the issues discussed above, the undersigned, as stated during the hearings, finds no basis to impose sanctions in these proceedings as a result of those issues as a part of this Report.  That said, the attorneys should make every effort going forward to ensure that the issues plaguing their prior pleadings and substantive motions are not repeated, and the continued filing of deficient pleadings and motions may result in the imposition of sanctions.

### C.  The Use of Experts

The undersigned's concern about the use of experts in ADA cases stems from Mr. Sheskin's written response to the Order to Show Cause.  In his response, Mr. Sheskin alleged that the experts the attorneys at FLA relied on "dictate[d] how cases would run, and even edit[ed] Counsel's work before submission."  Doc. 19 at 6.  Mr. Sheskin's allegations caused the undersigned to ask each of the attorneys in these proceedings about their use of ADA experts.  The

most concerning responses to these questions came from attorneys working for FLA.  Specifically, as discussed during the hearing involving FLA's current and former attorneys, the undersigned had serious concerns about the relationship between the clients and the experts, the attorneys' reliance on the experts (especially in the context of negotiating settlements), and whether there was any profit sharing amongst the attorneys at FLA and the experts.   All these issues raise concerns about violations of the Rules Regulating the Florida Bar and, by extension, the Local Rules of this Court.  But given the limited scope of these proceedings, the undersigned has made no findings with respect to those allegations and, consequently, finds no basis to impose sanctions at this time as a result of those allegations.  That said, the attorneys involved in these proceedings, including those who have no past or present association with FLA, should ensure that they maintain a proper relationship with the experts they utilize in any case they bring in federal court.

## V.       Conclusion

Accordingly, it is respectfully **RECOMMENDED** that:

1.  The Court **ADMONISH** Thomas B. Bacon, Alfredo Miguel Garcia-Menocal, Mario Elias Lopez, and Anthony J. Perez to follow the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders; and

2.  The Court hold this case open following its ruling on this Report so that the following may occur:

    a.   For a period of 12 months following the Court's ruling on this Report, Thomas B. Bacon, Michael Christine, Philip M. Cullen, III, Christine N. Failey, Alfredo Miguel Garcia-Menocal, William T. Leveille, II, Mario Elias Lopez, Anthony J. Perez, Joshua Howard Sheskin, and Rafael Viego, III, be required to file a notice in this case (*In re ADA Cases*, 6:18-mc-14) each time a judge in this

Division enters an order against them or their client that does any of the following based in whole or in part on a failure to comply with the Federal Rules of Civil Procedure, the Local Rules, or an order of the court: requires them or their client to show cause; strikes a filing; denies a motion; or dismisses a complaint or any claim therein;

b. Such notice shall be filed no later than 7 days after the entry of the order and shall identify the case in which the order was entered and the docket entry of the order; and

c. At the conclusion of the 12-month period, the undersigned be directed to conduct a review of the notices filed in this case and, based on the undersigned's review, enter a report and recommendation as to whether any further action should be taken against Thomas B. Bacon, Michael Christine, Philip M. Cullen, III, Christine N. Failey, Alfredo Miguel Garcia-Menocal, William T. Leveille, II, Mario Elias Lopez, Anthony J. Perez, Joshua Howard Sheskin, and Rafael Viego, III.

3. The Order to Show Cause (Doc. 4) be **DISCHARGED** and no further action be taken against Barry Mittelberg, Nadine Brown, Ayesa Conger, Andrew C. Enfield, Aaron Finesilver, and Eric Matthew Rodriguez;

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or

legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R.

3-1.

      Recommended in Orlando, Florida on November 13, 2018.

 

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy